UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MICHELLE RIOS**                                                                 **CIVIL ACTION**

**VERSUS**

**GRIFOLS BIOMAT USA**                                                    **NO. 18-814-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on July 17, 2020.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　

　　　　　　　　　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MICHELLE RIOS**                                                    **CIVIL ACTION**

**VERSUS**

**GRIFOLS BIOMAT USA**                                          **NO. 18-814-JWD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendant's Renewed Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended and Second Amended Complaints filed on May 20, 2020. (R. Doc. 60). The motion is opposed. (R. Doc. 63). Defendant filed a Reply. (R. Doc. 64).

**I.      Background**

Michelle Rios ("Plaintiff"), who is proceeding *pro se*, commenced this civil rights action on August 31, 2018 naming as the sole defendant her employer, Grifols Biomat USA ("Defendant").[1] Defendant filed a Rule 12(b)(6) Motion to Dismiss (R. Doc. 12) on November 21, 2018. The district court issued its Opinion (R. Doc. 27) on September 17, 2019, adopting the August 29, 2019 Report and Recommendation (R. Doc. 25), wherein Plaintiff's claims against Defendant were dismissed without prejudice to Plaintiff filing and amended complaint to cure the deficiencies noted. Plaintiff filed her Second Amended Complaint (R. Doc. 53) on April 7, 2020.[2]

Plaintiff brings claims pursuant to Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Rehabilitation Act, the Family Medical Leave Act, and the

---

[1] Defendant asserts that its correct corporate name is Biomat USA, Inc. (R. Doc. 22 at 1).

[2] Defendant seeks to dismiss both the Amended Complaint (R. Doc. 26) as well as the Second Amended Complaint (R. Doc. 53) filed by Plaintiff. While Plaintiff sought and received substitution of her Amended Complaint with the Second Amended Complaint (*See* R. Docs. 50 and 52), the Court notes that Plaintiff's Second Amended Complaint incorporates the allegations made in the Amended Complaint and the allegations in each will be considered together. (R. Doc. 53 at 1).

Louisiana Employment Discrimination Law. (R. Doc. 53 at 2). Plaintiff alleges that she was a qualified person with a disability, that she had an actual disability, that her employer regarded her as having a disability, and that she had a record of her disability. (R. Doc. 53 at 3). Plaintiff specifies that she was diagnosed with ulcerative colitis eight years ago, has been treated for same, and that the condition has caused her to miss work. (R. Doc. 53 at 3). Plaintiff was granted an accommodation that "included the need to work 6 hours, limiting the length of her work day, take regular breaks, and avoid lifting and pulling." (R. Doc. 26 at 3).

In support of her claims, Plaintiff alleges that, while she was an employee of Defendant, she has been on intermittent FMLA since her diagnosis, has taken intermittent FMLA leave as a result of appointments with medical providers and flare-ups of her condition, and that she had worked various shifts throughout her employment with Defendant. (R. Doc. 53 at 4). Plaintiff alleges that the aforementioned legal protections were violated when she was permanently placed on the closing shift with her employer the week of August 21, 2017, and an Assistant Manager stated, "I was instructed to put you on the close shift because you are on FMLA." (R. Doc. 53 at 6). The closing shift began at 12:00 p.m. through 6:00 p.m. but did not end "until the last client leaves most days extending the shift into the 9:00 p.m. hour." (R. Doc. 53 at 5). This is inconsistent with the alleged accommodation that plaintiff needed her work day limited to 6 hours.

Plaintiff also alleges that Defendant failed to provide her reasonable accommodations and failed to engage in the interactive process required by the ADA. (R. Doc. 53 at 6).

## II.     Law and Analysis

### A.     Legal Standards

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing

2

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

*Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a pro se plaintiff's] allegations and briefs more permissively"). Furthermore, in most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

  **B.** **Analysis of Plaintiff's Claims**

    **1.** **FMLA**

The FMLA was enacted to allow employees to "take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has

3

a serious health condition." 29 U.S.C. § 2601(b)(2). The FMLA "protects employees from retaliation or discrimination for exercising their rights under" the statute. *Mauder v. Metro Transit Auth. of Harris Cty.*, 446 F.3d 574, 580 (5th Cir. 2006).

Plaintiff alleges that she worked various shifts throughout her employment with Defendant, though had never been permanently placed on the closing shift. (R. Doc. 53 at 4-5). Plaintiff alleges that, after returning from a period of leave under the FMLA, she was scheduled to work the closing shift for an entire week, which she alleges constitutes an adverse employment decision because "[m]anipulating an employee's work hours/schedule to avoid responsibilities under FMLA is prohibited." (R. Doc. 53 at 5). When she asked Assistant Manager Janelle Mitchell about being placed on the closing shift, Plaintiff alleges that Mitchell stated, "I was instructed to put you on the close shift because you are on FMLA." (R. Doc. 53 at 5). Though it is unclear from her Second Amended Complaint whether Plaintiff avers these allegations support a claim for FMLA retaliation or interference, Plaintiff suggests that these actions constitute an attempt to prevent her from taking FMLA leave, and that the actions were taken because she was on FMLA. Thus, at the motion to dismiss stage, and taking into account Plaintiff's *pro se* status, it appears as though Plaintiff brings claims for FMLA interference and retaliation.

"Where an employee takes advantage of his rights under the statute and suffers retaliatory action by his employer, he may state a claim for retaliation under the FMLA. In order to state a prima facie claim of retaliation, the plaintiff must demonstrate that he was protected under the FMLA, that he suffered an adverse employment decision, and he was either treated less favorably than an employee who did not request leave under the FMLA, or that the adverse decision was made because he took FMLA leave." *Gomez v. O'Reilly Auto, Inc.*, 2017 WL 8728590, at *3 (W.D. Tex. Oct. 23, 2017). On the other hand, "[t]o establish a claim for FMLA

4

interference, an employee must show that the defendant 'interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her.'" *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 209 (5th Cir. 2018) (citing *Bryant v. Tex. Dept. of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)).

Plaintiff's original Complaint did not bring any claims pursuant to the FMLA and, therefore, was not before the Court on the first Motion to Dismiss. Plaintiff first brought claims under the FMLA in her Amended Complaint, and then again in her Second Amended Complaint. Plaintiff alleges that she was placed under the FMLA by Defendant, and that through that process, Defendant was made aware of her ulcerative colitis diagnosis. (R. Doc. 53 at 3). With these allegations, plaintiff has sufficiently alleged that she was protected under the FMLA, and the Court further notes that Defendant does not argue otherwise.

The Court then turns to the second and third factors, i.e., that Plaintiff suffered an adverse employment decision, and that adverse employment decision was made because she took FMLA leave. Plaintiff has clearly alleged that an employment decision was made because she took FMLA leave, but Defendant argues that such a decision does not constitute an adverse decision. (R. Doc. 60 at 19). Instead, Defendant argues that a change in shift alone does not constitute an adverse employment decision. (R. Doc. 60 at 12-13). Defendant suggests that the case of *Schilling v. Louisiana Dep't of Transp. & Dev.*, 2014 WL 3721959, at *18 (M.D. La. July 28, 2014), *order amended on reconsideration*, 2014 WL 3854619 (M.D. La. Aug. 4, 2014), supports a finding that a "change in an employee's work schedule did not rise to a material adverse employment action because it was basically a shift change that had no effect on compensation or total hours worked." (R. Doc. 60 at 12-13).

Here, however, Plaintiff has alleged that she requested and received an accommodation of 6-hour shifts, but in retaliation for taking FMLA leave she was permanently put on the closing

5

shift, which started at noon and, though scheduled until 6 p.m., often meant working until 9 p.m. (R. Doc. 26 at 3; R. Doc. 53 at 5). Thus, the allegations are not simply that Plaintiff's schedule was changed in retaliation, but that her schedule was changed, *and* that schedule change removed an accommodation that now required her to work longer hours. *Konnethu v. Harris Cty. Hosp. Dist.*, 669 F.Supp.2d 781, 794 (S.D. Tex. 2009) (refusal to reasonably accommodate an employee's medical needs can be considered an adverse action on the part of the employer.") (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2410–11, 2412–13 (2006)).

At the same time, Plaintiff asserts in opposition that, sometime after she was placed on the closing shift, she spoke with the Human Resources department about the schedule change. (R. Doc. 63 at 9). After speaking with the Human Resources department, Plaintiff "was placed back on her regular schedule – which included working only 1 day on the closing shift randomly which had been the past practices of defendant to rotate all employees on and off of the closing shift but never to place an employee on the closing shift permanently." (R. Doc. 63 at 9).

At the very least, Plaintiff has alleged that she was placed on the closing shift for some period of time, which would have required her to work longer hours than the 6-hour shifts supported by her accommodation. She also alleges that such placement on the closing shift was done in order to deter her from taking FMLA leave and/or retaliate against her for taking such leave. Thus, Plaintiff has stated a claim under the FMLA for purposes of Defendant's Motion to Dismiss.

### 2.     ADA

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of

6

employment." 42 U.S.C. § 12112(a). A plaintiff is a "qualified individual" under the ADA if he or she is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

"To prevail on a claim of discrimination based on failure to accommodate a disability, the plaintiff must show that (1) the employer is covered by the statute; (2) she is an individual with a disability; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation." *Blackard v. Livingston Par. Sewer Dist.*, No. 12-704, 2014 WL 199629, at *5 (M.D. La. Jan. 15, 2014) (citing *Mzyk v. North East lndep. Sch. Dist.,* 397 F. App'x 13, 16 n. 3 (5th Cir. 2010) (citations omitted)).

Under the ADA, the "term 'disability means, with respect to an individual -- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires" and "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). In other words, essential functions are those "basic" to the job. *See Myers v. Hose*, 50 F.3d 278, 282 (4th Cir. 1995) (essential function of a "bus driver is to operate his motor vehicle in a timely, responsible fashion"). Evidence of whether a function is essential includes, but is not limited, to (1) the employer's judgment as to which functions are essential; (2) written job descriptions; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the person to perform the function; and (5) the current experience of holders of similar jobs. *See* 29 C.F.R. § 1630.2(n)(3).

The ADA requires employers to make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). "The ADA does not [, however,] require an employer to relieve an employee of any essential functions of his or her job . . . reassign existing employees to perform those jobs, or hire new employees to do so." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) (holding employer was not required to accommodate firefighter who could not fight fires); *see also Barber v. Nabors Drilling U.S.A., Inc.,* 130 F.3d 702, 709 (5th Cir. 1997) ("We cannot say that [an employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions."). "As a matter of law, it is an unreasonable accommodation for the employer to have to exempt the employee from performance of an essential function of the job." *Jones v. Kerrville State Hosp.*, 142 F.3d 263, 265 (5th Cir. 1998) (citing *Barber*, 130 F.3d at 709). "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant." *Silva v. City of Hidalgo, Tex.*, 575 F. App'x. 419, 423 (5th Cir. 2014) (quoting *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997)).

Defendant argues that Plaintiff fails to allege that other employees were treated more favorably than her with regard to scheduling, and that putting her on the closing shift the week of August 21, 2017 does not constitute an adverse employment decision. (R. Doc. 60 at 14). Plaintiff responds in Opposition that her allegations regarding the change in her work schedule and denial of requests for FMLA constitute violations of the ADA. (R. Doc. 63 at 6).

Plaintiff alleges in her Amended Complaint that her accommodations "included the need to work 6 hours, limiting the length of her work day, take regular breaks, and avoid lifting and

8

pulling." (R. Doc. 26 at 3). In her Second Amended Complaint, Plaintiff alleges that Defendant made adverse decision when she was placed on the closing shift. (R. Doc. 53 at 6). For the same reasons set forth in the previous section, Plaintiff has stated a claim for failure to accommodate under the ADA. Plaintiff has alleged that she was placed on the closing shift, which would require her to work more than the 6-hour shifts that comprised part of her accommodation. While there is some indication that Plaintiff was returned to normal scheduling after addressing the issue with the Human Resources department, the allegations remain that, at least for some period of time, Plaintiff's accommodations were not honored. Although the Court makes no finding as to whether Plaintiff will be able to succeed in the ultimate resolution of her claims, these allegations are sufficient to survive Defendant's Motion to Dismiss as to failure to provide reasonable accommodations under the ADA.

### 3. Title VII

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an individual for opposing discrimination or otherwise participating in activity protected by the statute. 42 U.S.C. § 2000e-3(a).

Neither Plaintiff's Amended Complaint nor her Second Amended Complaint raise any allegation that she was discriminated against based upon her race, color, religion, sex, or national origin. Plaintiff has also not alleged any facts in support of a claim that her employer retaliated against her in light of any activity related to a discrimination claim under Title VII. Furthermore, Plaintiff does not allege that other employees of a different race, color, religion, sex, or national

9

origin were treated differently when it came to the scheduling of work hours.[3] Accordingly, Plaintiff has failed to state a claim under Title VII upon which relief can be granted, and Defendant's Motion to Dismiss will be granted as to Title VII.

### 4. LEDL

Plaintiff's sole reference to the LEDL is a citation to the statute providing its title, La. R.S. 23:301, in both her Amended Complaint as well as her Second Amended Complaint. (R. Doc. 26 at 1; R. Doc. 53 at 2). It appears that Plaintiff is seeking to maintain the same discrimination and retaliation claims as discussed above under the LEDL.

The LEDL is "substantively similar" to Title VII, and the outcome of "statutory discrimination and retaliation claims "will be the same under the federal and state statutes." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 n. 4 (5th Cir. 2007). Accordingly, to the extent Plaintiff seeks recovery under the LEDL for the same claims as raised under Title VII, those claims are subject to dismissal. Plaintiff has not sufficiently alleged discrimination on the basis of race, color, religion, sex, or national origin.

Similarly, "[t]he ADA and LEDL provide similar rights and remedies, such that Louisiana courts routinely reference federal ADA jurisprudence when considering LEDL claims." *Scott v. Turner Indus. Grp., LLC*, No. 9-872, 2011 WL 5023840, *4 (M.D. La. Oct. 19, 2011). Accordingly, to the extent Plaintiff seeks recovery under the LEDL for the same claims as

---

[3] In the Complaint, Plaintiff makes a passing reference that "these other employees are African Americans." (R. Doc. 1). Plaintiff makes no allegations that any decisions were based on her race or color, nor does she allege that any of the complained of decisions were made for such a reason. Neither the complaint nor amended complaints identify Plaintiff's race, color or ethnicity. For the first time, in Opposition, Plaintiff asserts new "facts" including that she is Hispanic, and that the other phlebotomists are non-Hispanic, and that she was discriminated based upon her race when she was treated differently from other non-Hispanic employees. (R. Doc. 64). The Court will not consider new facts alleged for the first time in briefing that are nowhere in the allegations set forth in the complaint as amended.

raised under the ADA, those claims are not subject to dismissal. Plaintiff has sufficiently alleged a failure to provide reasonable accommodations.

      **C.**      **Leave to Amend**

Courts are encouraged to grant leave to amend the complaint once to cure such deficiencies before dismissing a lawsuit with prejudice. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("Although a court may dismiss [a deficient] claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."). Here, Plaintiff has been given the opportunity to amend her pleadings once already, her original Complaint having been dismissed without prejudice for failure to state a claim. (R. Doc. 25 at 9; R. Doc. 27). Accordingly, the Court will not provide plaintiff further leave to amend.

**III.**    **Conclusion**

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant's Renewed Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended and Second Amended Complaints (R. Doc. 60) be **GRANTED in part** and **DENIED in part** and that Plaintiff's claims pursuant to Title VII of the Civil Rights Act of 1964, and her parallel claims under the Louisiana Employment Discrimination Law, La. R.S. 23:301, be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted, as more fully set forth herein.

Signed in Baton Rouge, Louisiana, on July 17, 2020.

                                                      **RICHARD L. BOURGEOIS, JR.**
                                                      **UNITED STATES MAGISTRATE JUDGE**